IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIE TERION WASHINGTON, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 4:07-CV-721 |
| BOBBY LUMPKIN, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

## PETITIONER'S BRIEF CONCERNING
## *SHINN V. RAMIREZ*, 142 S. CT. 1718 (2022).

James C. Lohman
S.D. Texas Bar #764049
Florida Bar #570214
1806 East 39th Street
Austin, Texas 78722
TEL: (512) 542-9947

Derek VerHagen (TX 24090535)
Assistant Federal Public Defender

David Currie (TX 24084240)
Assistant Federal Public Defender

Office of the Federal Public Defender
Northern District of Texas
Capital Habeas Unit
525 S. Griffin St., Ste. 629
Dallas, TX 75202
TEL: (214) 767-2746
FAX: (214) 767-2886 (fax)

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES ......................................................................iii

I.    INTRODUCTION .................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .......................5

    A.  At trial, Mr. Washington was represented by a now-disbarred attorney with no death penalty experience who was compensated through a worker's compensation case. ................ 5

    B.  Mr. Harris failed to raise a *Batson* challenge when the prosecution used six of their ten peremptory strikes on minority venire members, leading to an all-white jury.................... 6

    C.  The punishment phase of Mr. Washington's trial was plagued by prosecutorial misconduct and ineffective assistance of counsel............ 9

    D.  On direct appeal, a concurring justice expressed concern about counsel's performance. ........................................................ 11

    E.  In state habeas, Mr. Washington was represented by a volunteer lawyer with no criminal law experience of any kind. .......................... 11

    F.  The state court rejected Mr. Reger's requests for discovery and funding, while working behind the scenes to create a record favorable to the State. .......................................................... 13

    G.  Mr. Washington did not receive effective assistance of counsel during state habeas. ................................................................ 15

    H.  Mr. Washington raised the IATC-*Batson* and IATC-Mitigation claims in his federal petition. ......................................................... 16

    I.  Although this Court found that Mr. Washington's claims had potential merit and allowed him to exhaust his IATC-*Batson* and IATC-Mitigation claims in state court, the CCA refused to consider the merits of those claims........................................................ 17

    J.  When Mr. Washington returned to federal court, this Court denied the IATC-*Batson* and IATC-Mitigation claims without considering their merits. ......................................................................... 18

    K.  In Mr. Washington's first appeal to the Fifth Circuit, the court held that Mr. Reger had no excuse for failing to a raise an IATC-*Batson* claim (and that Mr. Harris had no excuse for failing to lodge a *Batson* challenge)................................................................. 19

i

L.   The United States Supreme Court vacated the Fifth Circuit's judgment in light of *Martinez v. Ryan*, and the Fifth Circuit remanded the IATC-*Batson* and IATC-Mitigation claims to this court for reconsideration. 20

M.   This Court denied the IATC-*Batson* and IATC-Mitigation claims a second time, again without considering the merits of the claims. ....... 21

N.   In Mr. Washington's second appeal to the Fifth Circuit, the court held that Mr. Washington's IATC-*Batson* and IATC-Mitigation claims were substantial and that there was significant evidence already in the record that Mr. Reger was ineffective as state habeas counsel ........... 22

O.   Subsequent to the latest remand, the parties have further developed the factual record ................................................................. 23

III.   ARGUMENT ................................................................. 27

A.   *Shinn* does not prevent this Court from holding an evidentiary hearing on the IAC-*Batson* and IAC Mitigation claims. ................................... 27

1.   *Shinn* held that state habeas counsel's ineffectiveness does not excuse the failure to develop the factual basis of a claim under § 2254(e)(2). ................................................................. 27

2.   If § 2254(e)(2) does not apply, neither does *Shinn*. ........................ 30

3.   Section 2254(e)(2) does not apply here ............................................. 31

B.   If the Court concludes that § 2254(e)(2) bars the consideration of any evidence that was not presented during Mr. Washington's state court proceedings, the Court should stay this case to enable Mr. Washington present the evidence to the state court. ................................. 37

1.   This court has the inherent authority to stay proceedings. ............ 37

2.   After Mr. Washington presents his new evidence to the state court, this Court will be able to consider the evidence in rendering its decision. ................................................................. 39

3.   In light of the CCA's decision in *Ex parte Robertson*, Mr. Washington has a strong chance of obtaining relief in state court. 41

C.   If this Court concludes that § 2254(e)(2) bars it from considering new evidence and that it will not stay this case, Mr. Washington requests an opportunity to submit legal briefing in support of his entitlement to relief on the existing record. ................................................. 44

IV.   CONCLUSION ................................................................. 45

CERTIFICATE OF SERVICE ................................................................. 47

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Quarterman,*
  2006 WL 2842075 (N.D. Tex. Sept. 29, 2006) ....................................................... 33

*Baker v. Brewer,*
  2020 WL 1952520 (E.D. Mich. 2020) .................................................................... 38

*Baker v. Stewart,*
  2017 WL 2334937 (E.D. Mich. 2017) .................................................................... 38

*Batson v. Kentucky,*
  476 U.S. 79 (1986) ......................................................................................*passim*

*Buck v. Davis,*
  137 S. Ct. 759 (2017) .......................................................................................... 42

*Cibelli v. Davis,*
  2021 WL 2224342 (D.N.J. 2021) ........................................................................... 38

*Coker v. Select Energy Servs., LLC,*
  161 F. Supp. 3d 492 (S.D. Tex. 2015) .................................................................... 37

*Coleman v. Thompson,*
  501 U.S. 722 (1991) ............................................................................................. 28

*Curtis v. BP Am., Inc.,*
  808 F. Supp. 2d 976 (S.D. Tex. 2011) .................................................................... 37

*Dominguez v. Hartford Financial Servs. Group,*
  530 F. Supp. 2d 902 (S.D. Tex. 2008) .................................................................... 37

*Flowers v. Mississippi,*
  139 S. Ct. 2228 (2019) ......................................................................................... 42

*Grace v. Vannoy,*
  826 F.3d 813 (5th Cir. 2016) ................................................................................. 37

*In re Keys,*
  692 F. App'x 92 (3d Cir. 2017) ............................................................................. 38

*Martinez v. Ryan,*
  566 U.S. 1 (2012) ........................................................................................*passim*

*Miller-El v. Cokrell,*
   537 U.S. 322 (2003) ........................................................................ 42

*Miller-EL v. Dretke,*
   545 U.S. 231 (2005) ........................................................................ 42

*Morales v. Turman,*
   383 F. Supp. 53 (E.D. Tex. 1974), *rev'd*, 535 F.2d 864 (5th Cir.
   1976), *rev'd*, 430 U.S. 322 (1977) ........................................... 10

*Mothershead v. Wofford,*
   2022 WL 2275423 (W.D. Wash. June 23, 2022) ................................ 31

*Peña-Rodriguez v. Colorado,*
   137 S. Ct. 855 (2017) ...................................................................... 42

*Rhines v. Weber,*
   544 U.S. 629 (2005) ................................................................ 38, 39

*Rosales v. Quarterman,*
   2008 WL 11492954 (S.D. Tex. 2008) ............................................ 8, 36

*Shinn v. Ramirez,*
   142 S. Ct. 1718 (2022) ..............................................................*passim*

*Trevino v. Davis,*
   861 F.3d 545 (5th Cir. 2017) ........................................................... 40

*Trevino v. Thaler,*
   569 U.S. 413 (2013) .................................................... 21, 28, 39, 40

*Velasquez v. Horel,*
   2009 WL 2251612 (E.D. Cal. 2009) .................................................. 38

*Wall v. Cain,*
   2009 WL 2046816 (E.D. La. July 13, 2009) ...................................... 33

*Wardrip v. Thaler,*
   705 F.Supp.2d 593 (5th Cir. 2010) .................................................. 33

*Washington v. Davis,*
   715 F. App'x ................................................................................... 16

*Washington v. Davis,*
   715 F. App'x 380 (5th Cir. 2017) ......................................... 2, 3, 6, 22

iv

*Washington v. Davis,*
    715 Fed. App'x 380 (5th Cir. 2017) ............................................... 31, 32

*Washington v. Stephens,*
    551 F. App'x 122 (5th Cir. 2014) ........................................... 21

*Washington v. Texas,*
    492 U.S. 912 (1989) ................................................................ 11

*Washington v. Thaler,*
    464 F. App'x ........................................................................ 15

*Washington v. Thaler,*
    464 F. App'x 2330 (5th Cir. 2012) ..................................*passim*

*Washington v. Thaler,*
    464 Fed. App'x 233 (5th Cir. 2012) ........................................ 31

*Williams v. Taylor,*
    529 U.S. 420 (2000) ................................................... 29, 32, 33

## Other State Cases

*Ex parte Robertson,*
    603 S.W.3d 427 (Tex. Crim. App. 2020)............................ 4, 41, 42, 43

*Washington v. State,*
    771 S.W.2d 537 (Tex. Crim. App. 1989)............................... 11

*Ex parte Washington,*
    2007 WL 602813 (Tex. Crim. App. 2007) ........................... 18

*Whitsey v. State,*
    796 S.W.2d 707 (Tex. Crim. App. 1989)............................ 7, 8

## Federal Statutes

21 U.S.C. § 848 ........................................................................... 17

28 U.S.C. § 2254 ..................................................................*passim*

## I.   INTRODUCTION

Pursuant to the Court's order dated June 22, 2022 [ECF No. 245], Petitioner Willie T. Washington respectfully submits the following brief concerning the effect of *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) on this case. *Shinn* holds that if a petitioner's state habeas counsel "fails to develop the factual basis of a claim" in the state court record within the meaning of 28 U.S.C. § 2254(e)(2), that fault is attributable to the petitioner even if his counsel performed deficiently during state habeas. At the same time, the Court left intact its previous holding in *Martinez v. Ryan*, 566 U.S. 1 (2012), that if an ineffective-assistance-of-counsel claim is procedurally defaulted in federal court because the petitioner did not *present* the claim in state court, the procedural default will be excused if the petitioner's state habeas counsel was ineffective. The upshot of *Shinn* is that the equitable exception to procedural default announced in *Martinez* remains: a federal court can consider a procedurally defaulted ineffective-assistance-of-trial counsel claim if the petitioner's state habeas counsel was ineffective. But, if petitioner's state habeas counsel failed to develop the factual basis of the claim in state court, § 2254(e)(2) will bar the federal court from considering evidence beyond the state court record in ruling on the merits of the claim.

This case concerns two ineffective-assistance-of-trial counsel ("IATC") claims that were remanded to this Court for an evidentiary hearing. *Washington v. Davis*, 715 F. App'x 380 (5th Cir. 2017). The first claim alleges that Mr. Washington's trial counsel performed deficiently by failing to object under *Batson v. Kentucky*, 476 U.S. 79 (1986), when the prosecutors utilized six of their ten peremptory challenges to remove minority prospective jurors, leading to an all-white jury. The second remanded claim alleges that trial counsel performed deficiently at the punishment phase of trial by failing to investigate and present persuasive and readily available mitigating evidence and failing to investigate and rebut aggravating evidence used to achieve a death sentence. Both claims are procedurally defaulted because Mr. Washington's state habeas counsel Gary Reger, a transactional attorney who had no criminal law experience when he volunteered to represent Mr. Washington, did not present them in state court. Mr. Washington has alleged that Mr. Reger performed deficiently by failing to present the claims, and that the procedural default is therefore excused pursuant to *Martinez*.

The Fifth Circuit has already held that "[t]he mere fact that [Mr. Washington's] state habeas counsel failed to raise two potentially meritorious IATC claims evidences his ineffectiveness and the prejudice that resulted therefrom." *Washington v. Davis*, 715 F. App'x 380, 385 (5th Cir. 2017). The Fifth Circuit has also held that trial counsel's "failure to raise a *Batson*

challenge at voir dire may have been ineffective assistance," and that there was more a than sufficient basis in the record for Mr. Reger to present the IATC-*Batson* claim during state habeas. *Washington v. Thaler*, 464 F. App'x 233, 239-240 (5th Cir. 2012). In its most recent decision in this case, the Fifth Circuit remanded to this court for an evidentiary hearing. *Washington v. Davis*, 715 F. App'x at 386.

The question before this court is whether Mr. Reger failed to develop the factual basis of the IATC-*Batson* and IATC-Mitigation claims in state court. The answer to that question is no. Although Mr. Reger performed deficiently in failing to present the IATC-*Batson* and IATC-Mitigation claims, he diligently sought factual development in state court. Mr. Reger requested access to the prosecution's file (which, as would be revealed over a decade later, contained racially-coded juror questionnaires), depositions of trial counsel and the prosecutors (both of whom have a documented history of violating *Batson* and striking minority jurors), and information on the jury selection practices of Harris County District Attorney's Office. The trial court refused to permit any of the factual development requested by Mr. Reger. He also sought appointment of co-counsel with capital experience (as required under the then-existing ABA guidelines) and funding for an investigator and experts, including a mental health expert. The trial court refused to grant those requests as well. It also refused to hold an evidentiary hearing.

Mr. Reger's efforts to develop the factual record in state court do not excuse his failure to present the IATC-*Batson* and IATC-Mitigation claims. As the case law interpreting § 2254(e)(2) makes clear, however, his efforts were sufficiently diligent to establish that he did not fail to develop the factual bases of the claims. Accordingly, § 2254(e)(2) does not bar this Court from considering evidence beyond the state court record.

As discussed below, should the Court conclude otherwise (which, respectfully, it should not), the Court may still consider the new evidence developed in federal court by staying this case to allow Mr. Washington to present the evidence in state court. Such a stay would be warranted not only to ensure federal review of Mr. Washington's claims, the merits of which no court has ever adjudicated, but also because there is a significant possibility that the state court could grant Mr. Washington relief on his IATC-*Batson* claim in light of the Texas Court of Criminal Appeals' recent decision in *Ex parte Robertson*, 603 S.W.3d 427 (Tex. Crim. App. 2020), in which it agreed to reassess a *Batson*-related ineffectiveness claim in light of new case law.

Finally, if the Court concludes both that § 2254(e)(2) bars it from considering evidence beyond the state court record and that it will not stay the case, Mr. Washington respectfully requests the opportunity to submit legal briefing concerning the merit of the claims on the existing record.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   At trial, Mr. Washington was represented by a now-disbarred attorney with no death penalty experience who was compensated through a worker's compensation case.

Mr. Washington was charged with capital murder in connection with a shooting that occurred on December 19, 1985 at Mike's Food Market, a convenience store in Houston's Fifth Ward. ECF No. 42 at 7. Mr. Washington's trial counsel was Reo Harris, Jr., a local general practitioner who had never tried a death penalty case. TAP Exh. 10 at 37–38.[1] After Mr. Washington's trial, Mr. Harris never tried another death penalty case. *Id.* He was repeatedly disciplined by the State Bar of Texas and eventually disbarred completely in 2008. *See* ECF No. 42-1 at 61 & n.3; TAP Exh. 6.[2]

Mr. Harris charged Mr. Washington an all-inclusive flat fee of $10,000. *See* ECF No. 42-1 at 67–74; TAP Exh. 10 at 58–59. Because Mr. Washington could not pay the fee up front, Mr. Harris arranged to be compensated through a worker's compensation case Mr. Washington had recently filed. ECF No. 42-1 at 69. On October 29, 1985, about six weeks before the shooting, Mr. Washington had sustained a traumatic head injury at his workplace when a 55-gallon drum and a wooden dolly fell on top of him. Exh. A. Mr. Washington

---

[1] The exhibits to Mr. Washington's Third Amended Petition, which is the operative petition in this case, were hand filed in 2007 and do not appear on the electronic docket. Throughout this brief, the exhibits will be cited as "TAP Exh. ___."

[2] Mr. Harri's disbarment is reflected here:
https://www.law.uh.edu/libraries/ethics/attydiscipline/2009/03da2009.pdf.

was knocked unconscious by the impact, which caused blunt head trauma, a concussion, and severe post-traumatic vascular headaches. *Id.*

Mr. Harris had Mr. Washington fire his workers' compensation attorney and replace the attorney with Mr. Harris, so that Mr. Harris could claim a portion of the legal fee. ECF No. 42-1 at 68–69. Mr. Harris also had Mr. Washington sign over the entirety of his workers' compensation settlement, which was $5,000. *Id.* Together with a few thousand dollars that Mr. Washington's brother provided, Mr. Washington ultimately paid Mr. Harris approximately $8,000. *Id.*

> **B.   Mr. Harris failed to raise a *Batson* challenge when the prosecution used six of their ten peremptory strikes on minority venire members, leading to an all-white jury.**

Jury selection began in October 1986. The prosecution used at least six of their ten peremptory challenges to strike minority venire members. *See Washington v. Davis*, 715 F. App'x 380, 384 (5th Cir. 2017). The resulting jury was all-white. *Id.* The State's pattern of strikes was so egregious that the Fifth Circuit would later find that it was more than sufficient to provoke a challenge based on *Batson v. Kentucky*, 476 U.S. 79 (1986). *Washington v. Davis*, 464 F. App'x 233, 239–240 (5th Cir. 2012). Mr. Harris, however, failed to object to any of the repeated strikes of minority members from Mr. Washington's jury. Although it did not decide the merits of the claim (no court ever has), the Fifth

Circuit would later acknowledge that Mr. Harris's "failure to raise a *Batson* challenge at voir dire may have been ineffective assistance." *Id.* at 240.

Subsequent events and evidence confirmed that Mr. Washington likely would have prevailed on a *Batson* challenge, had Mr. Harris preserved the issue. After years of refusing to open its file from Mr. Washington's trial, the Harris County District Attorney's Office was forced to do so by this Court in 2000. *See Washington v. Johnson*, 4:99-cv-00140, ECF. No. 64 (Mar. 31, 2000) (granting motion to discovery of prosecution's file); *Washington v. Johnson*, 4:99-cv-00140, ECF. No. 71, Order (July 12, 2000) (ordering HCDAO to produce "the entire file relating to Washington" for *in camera* inspection). Among the items HCDAO had improperly withheld were racially coded notations on the prosecutors' copies of the jury questionnaires. TAP Exh. 23. The prosecution had marked each of the Black venire member's questionnaires with a "B." *Id.*

Moreover, both the prosecutors at Mr. Washington's trial, Bob Stabe and Keno Henderson, have a documented history of violating *Batson*. In *Whitsey v. State*, 796 S.W.2d 707 (Tex. Crim. App. 1989), the Texas Court of Criminal Appeals ("CCA") found that Mr. Stabe violated *Batson* during a 1985 trial. Just as in Mr. Washington's case, Mr. Stabe racially coded the jury questionnaires. *Id.* at 771. The CCA rejected Mr. Stabe's explanation that the coding was necessary to create "'landmarks' in the sea of faces on panel" as "disjointed, unwieldy, and inefficient . . . [and] hardly *plausible*." *Id.* at 727 (emphasis in

original). Based on the testimony of multiple defense attorneys who tried cases against him and the fact that a Black juror was seated in only two of the 29 cases he had prosecuted up to that point, the CCA also found that Mr. Stabe had a long-standing practice of striking all Black prospective jurors from his panels. *Id.* at 731–32.

Just like Mr. Stabe, Mr. Henderson would also later be found to have violated *Batson* during a trial that took place in 1985, just a year before Mr. Washington's. *Rosales v. Quarterman*, 2008 WL 11492954 (S.D. Tex. 2008). As in Mr. Washington's case, the *Rosales* case involved racially coded juror questionnaires. *Id.* at *8. The court noted that "few minorities served on Harris County juries" when Mr. Henderson was a prosecutor and that he "rarely if ever allowed minorities to sit on capital juries." *Id.* at *10. One of the ways Mr. Henderson would accomplish this was to use "disparate questioning techniques in an effort to disqualify minority jurors." *Id.* The court found that Mr. Henderson had employed that tactic in *Rosales*, "ask[ing] some minority jurors open-ended and confusing questions, seeking their opinion on legal issues without providing any context," while "le[ading] white jurors through difficult legal concepts by providing preparatory explanations and by asking questions that presupposed a favorable response." *Id.* at *11.

**C.  The punishment phase of Mr. Washington's trial was plagued by prosecutorial misconduct and ineffective assistance of counsel.**

At the punishment phase of Mr. Washington's trial, the State's evidence focused on several alleged extraneous offenses as well as Mr. Washington's purported attempt to escape from the Texas Youth Commission ("TYC") when he was 15 years old. ECF No. 42-2 at 191. Over a decade later, when the State was finally ordered to disclose its file, it would be revealed that the witnesses to the two most aggravated extraneous offenses both had substantial criminal records. One witness had been convicted of murdering a five-year-old child, for which the HCDAO had actually sought the death penalty against her. ECF No. 42-5 at 216–26. She also had multiple convictions for theft, a crime of moral turpitude. *Id.* Another witness had numerous, undisclosed convictions for theft and prostitution, also a crime of moral turpitude. *Id.* at 230–34. The jury, however, never learned about the witnesses' criminal histories.

As to Mr. Washington's time in TYC, the State's witness testified that Mr. Washington escaped from a group while on an outdoors trip and was on the run for as long as six hours. *Id.* at 237; ECF No. 42-4 at 191 n.95.  The TYC records, however, reflect that Mr. Washington was missing for only 30 minutes. *Id.* Because Mr. Harris did not review Mr. Washington's TYC records, he did not bring that major discrepancy to the jury's attention. The jury likewise did not learn that, according to those same records, Mr. Washington was a model

resident at the juvenile facility who was repeatedly praised as "an asset to the dorm" and someone who has "never . . . been a behavioral problem." ECF No. 42-4 at 191–96. The same TYC employee who testified concerning the purported escape attempt—a key component of the State's case that Mr. Washington posed a future danger—wrote in his contemporaneous report some fifteen years earlier that Mr. Washington "presented no problems" at TYC and that "[h]is behavior in school has been model." *Id.* at 194. Again, however, the jury knew none of this information due to trial counsel's negligence.

Nor did the jury learn that conditions at Gatesville State School, the TYC facility where Mr. Washington was incarcerated, were so inhumane the facility was ordered closed by a federal court because it violated the Eighth Amendment's prohibition on cruel and unusual punishment. ECF No. 42-2 at 194–95; *see also Morales v. Turman*, 383 F. Supp. 53, 75–76 (E.D. Tex. 1974), *rev'd*, 535 F.2d 864 (5th Cir. 1976), *rev'd*, 430 U.S. 322 (1977). The federal court found that Gatesville, at the time Mr. Washington was incarcerated there, was irredeemably plagued by "brutality and indifference" such that "effective rehabilitative treatment" was "impossible." *Morales*, 383 F. Supp. At 121. The litigation surrounding Gatesville continued for many years and was heavily publicized throughout Texas. ECF No. 186-3 at 15–17. Mr. Harris, however, did not investigate or present any evidence concerning the conditions at Gatesville.

Mr. Harris did not retain any expert witnesses.  He did not retain a mitigation specialist. Despite knowing that Mr. Washington had sustained a traumatic head injury just before the shooting, he did not have Mr. Washington evaluated by a neuropsychologist or any mental health expert of any kind.

### D.  On direct appeal, a concurring justice expressed concern about counsel's performance.

Mr. Washington was represented on appeal by William K. Goode. On March 1, 1989, the CCA affirmed his conviction. *Washington v. State*, 771 S.W.2d 537 (Tex. Crim. App. 1989). Due to the large number of unpreserved but troubling issues, one of the concurring justices expressed "reservations about effectiveness of counsel." *Id.* at 548 (Clinton, J., concurring). Certiorari was denied in the United States Supreme Court on June 26, 1989. *Washington v. Texas*, 492 U.S. 912 (1989).

### E.  In state habeas, Mr. Washington was represented by a volunteer lawyer with no criminal law experience of any kind.

At the time of Mr. Washington's state habeas proceedings, there was no public capital defender agency available for appointment in death penalty cases, as there is now with the Office of Capital and Forensic Writs. ECF No. 42-1 at 55–57. Nor was there any formalized mechanism for obtaining counsel for death-sentenced petitioners. *Id.* In an attempt to fill the vacuum, the President of the Texas Bar made a general appeal to

attorneys throughout the state to volunteer as counsel in post-conviction death penalty cases. *Id.*

One of the attorneys who responded the request was Gary Neale Reger of Beaumont, who was then assigned to Mr. Washington's case. *Id.* Mr. Reger's willingness to take on a death penalty case pro bono was no doubt admirable. *Id.* He was, however, woefully underprepared to take on a capital post-conviction case, a deficiency in Mr. Washington's representation that he quickly recognized. Early in the case, Mr. Reger pled for the court to appoint an experienced criminal law attorney, explaining:

> I practice general commercial law, with an emphasis on banking and bankruptcy. Although I have been an attorney of record in civil litigation, I have never personally tried a jury trial. My primary litigation experience has been in bankruptcy court. I have had no significant criminal law experience and only had one criminal course in law school, which was a course on pre-trial criminal procedure.

TAP Exh. 4, Tab C.

Indeed, Mr. Reger's credentials did not come close to matching what was required for post-conviction counsel under the then-applicable American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (the "1989 ABA Guidelines"). *See* 1989 ABA Guideline 5.1.III. The same Guidelines also required that two qualified attorneys be appointed to a capital post-conviction case. *See* 1989 ABA Guidelines 2.1. The court, however, refused to appoint experienced counsel for Mr. Washington. As

a result, instead of receiving representation from two qualified attorneys, as required by the 1989 Guidelines, Mr. Washington was represented by a single, completely unqualified volunteer attorney. Indicative of the unsuitability of his representation, Mr. Washington's case was the first and only death penalty case that both his trial counsel and his state habeas counsel ever attempted to handle.

**F.    The state court rejected Mr. Reger's requests for discovery and funding, while working behind the scenes to create a record favorable to the State.**

Despite his inexperience, Mr. Reger made multiple attempts to factually develop Mr. Washington's case, but these efforts were stymied by the trial court. *See* ECF No. 42 at 32. Early in the case, Mr. Reger sought access to the prosecution's file. TAP Exh. 4, Tabs B, F.  That was denied. Mr. Reger sought funding to hire an investigator, which the trial court also denied. *Id.* Mr. Reger also sought funding for experts, including a mental health expert. *Id.*, Tab F. That was likewise denied. Recognizing that there was potentially a *Batson* issue in the case, Mr. Reger sought—and was denied—discovery concerning HCDAO's jury selection practices. *Id.*, Tab B, Tab D at 23–24. The trial court also denied Mr. Reger's request to depose Mr. Harris, as well as Bob Stabe and Keno Henderson, the prosecutors who tried Mr. Washington's case. *Id.* Tabs B, F. The court also refused to hold an evidentiary hearing. ECF No. 42 at 32.

After Mr. Reger filed the initial state habeas application, the court colluded *ex parte* with HCDAO and Mr. Harris to produce a favorable record. On September 25, 1990, in response to allegations of ineffective lawyering, Mr. Harris submitted a short affidavit that was full of grammatical and spelling errors wherein he admitted he only "spent approrimately [sic] seventeen hours preparing for the trial of Mr. Washington's case." ECF No. 42 at 11–12. Seven months later, however, Mr. Harris submitted a second, much more polished and detailed affidavit that attempted to walk back his previous admission. *Id.* Mr. Reger unsuccessfully attempted to have the second affidavit struck. TAP Exh. 4, Tab G.

The mystery of the second affidavit's origin and drafting was solved a decade later, during a recusal hearing in an entirely separate case in which the trial judge and the HCDAO prosecutor who handled Mr. Washington's post-conviction proceedings testified. ECF No. 42 at 12–16. It was revealed that after Mr. Harris filed his original affidavit, the trial judge approached the prosecutor and inquired about the affidavit. *Id.* The prosecutor stated that the judge was dissatisfied with it. *Id.* The trial judge testified that, at the prosecutor's request, she then summoned Mr. Harris "to come to Court" and informed Mr. Harris that he needed to redo his affidavit. *Id.* According to the prosecutor, Mr. Harris came to her office and they created the second affidavit

together. *Id.* The entire process occurred entirely *ex parte* and without the involvement of or any notice to Mr. Washington or Mr. Reger. *Id.*

### G. Mr. Washington did not receive effective assistance of counsel during state habeas.

Due to Mr. Reger's lack of experience, which was compounded by the habeas court's refusal to permit factual development or provide additional resources, Mr. Washington did not receive effective assistance of counsel during his state habeas proceedings. Although Mr. Reger diligently sought to factually develop an IATC-*Batson* claim by seeking the State's file, information concerning HCDAO's jury selection practices, and the depositions of Mr. Harris, Mr. Stabe, and Mr. Henderson, he nonetheless completely failed to plead the claim. This failure is inexcusable because, as the Fifth Circuit later held, Mr. Reger had more than sufficient evidence in the trial record to raise a *Batson*-based IATC claim, just as Mr. Harris had a more than sufficient basis to raise a *Batson* challenge during voir dire. *Washington v. Thaler*, 464 F. App'x at 239–40. Under the 1989 ABA Guidelines, post-conviction counsel were required to "present to the appropriate court or courts all arguable meritorious issues." *See* 1989 ABA Guideline 11.9.3.C. Mr. Reger failed to do so. As a consequence, the IATC-*Batson* claim was procedurally defaulted. *Washington v. Thaler*, 464 F. App'x at 240–41. Because of the procedural default, the merits

of the IATC-*Batson* claim have never been adjudicated by any state or federal court.

Likewise, the IATC-Mitigation claim pled by Mr. Reger was similarly lacking in supporting mitigation evidence, so much so that when Mr. Washington's federal counsel filed an IATC-Mitigation that did contain substantial supporting evidence, the court held that it was an entirely new claim. *Washington v. Davis*, 715 F. App'x at 381–82. The holding also had the effect of making the claim procedurally defaulted. *Id.* While Mr. Reger diligently sought the appointment of a second attorney, funding for an investigator, and funding for a mental health expert, the trial court's denial of those requests, though clearly improper, does not remedy the deficiencies in the representation Mr. Washington received in state habeas.

### H. Mr. Washington raised the IATC-*Batson* and IATC-Mitigation claims in his federal petition.

At a hearing on September 7, 1997, the state court denied Mr. Washington's post-conviction claims by writing a brief note on the reverse of the last page of the HCDAO's Proposed Findings of Fact and Conclusions of Law, thereby adopting them verbatim. ECF No. 42 at 33–38. The CCA adopted most of the district court's findings of fact and conclusions of law and denied relief in a roughly one-page Order on January 14, 1998. TAP, Exh. 1, *Ex Parte Washington*, No. 35,410-01.

On March 3, 1998, Mr. Washington filed a Motion for Appointment of Counsel and a Motion to Proceed *In Forma Pauperis* in this Court. *Washington v. Cockrell*, Cause No. 4:99-cv-00140, ECF Nos. 1 and 2 (Mar. 3, 1998). The Motion was granted on March 17, 1998, and counsel were appointed to represent Mr. Washington in federal proceedings pursuant to 21 U.S.C. § 848(q)(4)(B) on March 19, 1998. *Washington v. Cockrell*, ECF Nos. 8 and 9. Mr. Washington filed his initial Petition for a Writ of Habeas Corpus on January 14, 1999 raising, among other things, the IATC-*Batson* and IATC-Mitigation claims. *Washington v. Cockrell*, ECF No. 26. He filed an Amended Petition for a Writ of Habeas Corpus on February 25, 1999. *Washington v. Cockrell*, ECF No. 36. After the HCDAO finally turned over its full file, including the racially-coded-jury questionnaires, in response to this Court's orders, Mr. Washington filed a Second Amended Petition. *Washington v. Cockrell*, ECF No. 80.

**I.   Although this Court found that Mr. Washington's claims had potential merit and allowed him to exhaust his IATC-*Batson* and IATC-Mitigation claims in state court, the CCA refused to consider the merits of those claims.**

On December 10, 2001, finding the claims "potentially meritorious," but unexhausted, this Court dismissed Mr. Washington's mixed petition without prejudice to enable Mr. Washington to return to state court and exhaust several claims that were based on newly discovered evidence. *Washington v. Cockrell*, ECF No. 97.  Mr. Washington, accordingly presented those claims to

the state courts, including the IATC-*Batson* and IATC-Mitigation claims. The CCA refused to consider the IATC-*Batson* and IATC-Mitigation claims on the merits, and instead dismissed them as procedurally defaulted on the ground that Mr. Reger could have raised them in the original state habeas proceeding. *Washington v. Thaler*, 464 F. App'x at 234; *see also Ex parte Washington*, 2007 WL 602813, at *1 (Tex. Crim. App. 2007). Mr. Washington's *Brady/Napue* claim based on the State's withholding of impeachment evidence concerning the punishment phase witnesses was authorized for further review in the trial court. *Ex parte Washington*, 2007 WL 602813, at *1. The trial court ultimately denied the claims on the merits. *Id.* On February 28, 2007, the CCA entered an order denying Mr. Washington's subsequent writ, adopting the trial court's (i.e., the State's proposed) findings of fact and conclusions of law that were entered without the benefit of a hearing. *Id.*

### J. When Mr. Washington returned to federal court, this Court denied the IATC-*Batson* and IATC-Mitigation claims without considering their merits.

The following day, on March 1, 2007, Mr. Washington filed a Petition for Writ of Habeas Corpus in this Court seeking only to preserve his right to federal review of his conviction and sentence of death, and requesting a brief period of time in which to recruit substitute counsel due to the inability of his counsel to continue representing him because of changes in employment. ECF No. 1.

On May 11, 2007, the Court appointed James C. Lohman and David Arthur Lane as federal habeas counsel for Mr. Washington. ECF No. 3. At a status conference on April 17, 2008, the Court granted new counsel until August 18, 2008, to file an amended habeas petition on behalf of Mr. Washington. ECF No. 36. That date was subsequently extended to September 1, 2008. ECF No. 39.

On August 3, 2009, this Court denied Mr. Washington's petition, finding that both the IATC-*Batson* and IATC-Mitigation claims were procedurally defaulted. ECF No. 54. The Court did not discuss the merits of either claim. The Court did, however, grant a certificate of appealability (COA) as to Mr. Washington's IATC-*Batson* claim. ECF No. 77. Mr. Washington appealed that claim and also sought a COA on his IATC-Mitigation claim and the *Brady/Napue* claim. *Washington v. Thaler*, 464 F. App'x at 234.

### K.  In Mr. Washington's first appeal to the Fifth Circuit, the court held that Mr. Reger had no excuse for failing to a raise an IATC-*Batson* claim (and that Mr. Harris had no excuse for failing to lodge a *Batson* challenge).

With respect the IATC-*Batson* claim, the key issue before the Fifth Circuit was whether Mr. Reger needed the racially coded juror questionnaires to raise the claim or whether he should have raised the claim based solely on the information available to him during state habeas. The Fifth Circuit observed that "[t]he failure to raise a *Batson* challenge at voir dire may have

been ineffective assistance" by Mr. Harris. *Washington v. Thaler,* 464 F. App'x at 240. The Court nevertheless affirmed the district court's denial o f r e l i e f based on its application of procedural default, finding that trial counsel's ineffectiveness in failing to object to the excusal of minority jurors was an available state habeas claim even without the evidence of discriminatory intent in the undisclosed questionnaires. *Id.* at 241 ("[T]he basis for any *Batson* challenge was sufficiently present at voir dire and thus Washington's failure to raise the ineffective assistance claim in his first habeas corpus petition triggered the procedural bar of Section 5."). The Fifth Circuit denied COA on the IATC-Mitigation claim, finding that since it could only consider "non-defaulted" evidence (i.e., evidence that Mr. Reger presented during state habeas as opposed to the substantial mitigation evidence developed by federal counsel), the claim lacked merit. *Id.*

**L.    The United States Supreme Court vacated the Fifth Circuit's judgment in light of *Martinez v. Ryan*, and the Fifth Circuit remanded the IATC-*Batson* and IATC-Mitigation claims to this court for reconsideration.**

On March 20, 2012, the United States Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), for the first time creating an equitable exception to the long-established rule that ineffective assistance of post-conviction counsel in state court could not constitute cause to excuse the procedural default of a claim for relief raised in a federal habeas corpus petition. On June 11, 2012,

Mr. Washington filed his petition for writ of *certiorari* from the Fifth Circuit in the Supreme Court. He argued that in light of the Supreme Court's intervening *Martinez* decision, the procedural default of his IATC-*Batson* and IATC-Mitigation claims could be excused based on Mr. Reger's deficient performance as state habeas counsel. On May 28, 2013, while Mr. Washington's certiorari petition was pending, the Supreme Court decided *Trevino v. Thaler*, 569 U.S. 413 (2013), holding that *Martinez* is applicable in Texas because state habeas is effectively the first opportunity for a prisoner to present evidence outside the trial record.

On June 3, 2013, the Supreme Court granted Mr. Washington's petition for writ of *certiorari*, vacated the Fifth Circuit's opinion affirming the denial of habeas relief, and remanded the case for further consideration in light of *Trevino. Washington v. Thaler,* 569 U.S. 413 (2013). On January 3, 2014, the Fifth Circuit granted Mr. Washington's application for a COA on his claims of ineffective assistance of counsel and remanded the case to this Court "to reconsider Washington's procedurally defaulted ineffective assistance claims in light of *Trevino.*" *Washington v. Stephens,* 551 F. App'x 122 (5th Cir. 2014).

## M. This Court denied the IATC-*Batson* and IATC-Mitigation claims a second time, again without considering the merits of the claims.

On remand, this Court again denied the IATC-*Batson* and IATC-Mitigation claims. ECF No. 129. The Court did not address the merits of the

claims. Instead, the Court held that the claims remained procedurally defaulted because "unlike in *Martinez*, where state habeas counsel effectively abandoned the petitioner, Washington's state habeas counsel filed a writ application raising a number of claims for relief." *Id.* at 5. On July 18, 2017, the Court denied Petitioner's Motion to Alter or Amend Judgment. ECF No. 134.

> **N. In Mr. Washington's second appeal to the Fifth Circuit, the court held that Mr. Washington's IATC-*Batson* and IATC-Mitigation claims were substantial and that there was significant evidence already in the record that Mr. Reger was ineffective as state habeas counsel.**

Mr. Washington again appealed to the Fifth Circuit. On December 20, 2017, it issued an opinion granting Mr. Washington's COA, vacating this Court's order denying habeas relief, and remanding the case for an evidentiary hearing. *Washington v. Davis,* 715 F. App'x 380 (5th Cir. 2017). The Fifth Circuit held that Mr. Washington had made "a substantial showing of the denial of a constitutional right" with respect to both the IATC-*Batson* and IATC-Mitigation claims. *Id.* at 383 (quoting 28 U.S.C. § 2253(c)(2)). The Fifth Circuit also held that the record as it stood then already contained substantial evidence that Mr. Reger's performance as state habeas counsel had been ineffective:

> Turning to his state habeas counsel claim, there is again a basis in the record to find the representation was debatably ineffective. The mere fact that state habeas counsel failed to raise two

potentially meritorious IATC claims evidences both his ineffectiveness and the prejudice that resulted.

*Id.* at 385. The court of appeals again remanded the IATC-*Batson* and IATC-Mitigation claims to this court, this time for an evidentiary hearing.

### O.   Subsequent to the latest remand, the parties have further developed the factual record.

On December 28, 2018, this Court scheduled an evidentiary hearing for August 12, 2019, on the two claims remanded by the Fifth Circuit. ECF No. 160. The hearing was subsequently continued several times and stayed throughout the COVID-19 pandemic until June 6, 2022. ECF Nos. 193, 206, 220. During that time, the parties continued to develop the factual record. Mr. Harris was deposed again, this time with a focus on the IATC-*Batson* and IATC-Mitigation claims. Mr. Stabe and Mr. Henderson, pursuant to an Order issued by this Court, submitted affidavits proffering their purportedly race-neutral reasons for striking the minority jurors. Mr. Washington produced Mr. Reger's file for the Director to review and the Director's counsel spent several days at Mr. Washington's counsel's office reviewing and making copies of the file.

A significant amount of expert activity has also occurred. Mr. Washington was evaluated by a neuropsychologist who, using the methodology that prevailed in the mid-1980s, concluded that Mr. Washington exhibited significant cognitive impairments and that these impairments may have

resulted from head trauma. ECF No. 199-1. Mr. Washington was also evaluated by a neuropsychiatrist who endorsed the findings of the neuropsychologist and concluded in addition that "Mr. Washington shows symptoms of trauma across multiple domains: emotional, physical, cognitive, behavioral, social and developmental. . . . He cannot correctly interpret information, resulting in paranoia and delusions . . . ." These "impairments affect his ability to problem solve and understand the content of what is being said to him and what is happening around him." ECF No. 186-1. The Director retained his own neuropsychologist, who also evaluated Mr. Washington and subsequently issued his own report.

Mr. Washington served several additional expert reports. One is from an expert on the history of TYC, including the conditions at Gatesville at time Mr. Washington was a child inmate. ECF No. 186-3. Mr. Washington also served multiple expert reports from a social work expert, who opined that

> Willie Terion Washington is a deeply traumatized man who experienced abandonment by his caregivers, his school and his community. From a very young age, he suffered unrelenting physical abuse at the hands of his mother. His father was rarely around and inadvertently enabled his mother's abuse by failing to step in and protect him. These insults were furthered by chronic parental neglect, leaving Terry essentially parentless. The impoverished, violent streets of the Fifth Ward became Terry's second home, which forced him to develop maladaptive survival skills. The cumulative effects of Terry's complex trauma have never been addressed through any long term or meaningful treatment. This has diminished his ability to establish a stable and productive

life."

ECF No. 186-2.

> Terry was the one and only brother who was actually known to avoid violence. He was basically passive, kept to himself and tried to keep up with his peers who mostly considered him on the slow side when it came to understanding games or engaging in petty mischief. He even failed 2nd grade, likely the result of various factors including his unsupportive home situation. He did not start fights. He was respectful to adults and was known as a youngster who said "Yes, Sir" and "No ma'am" when addressing his elders. He was regarded by his female peers and their parents as a boy they could trust to walk them home from school. . . . .

> Willie Terion Washington is a deeply traumatized individual. From a very young age, he suffered severe physical abuse at the hand of both his mother and father. His father neglected Terry, failed to protect him from his highly abusive mother, and effectively abandoned him. His trauma is profound, even relative to others raised in an impoverished, violent environment such as the Fifth Ward. . . .

> These adverse experiences include, but are not limited to, intergenerational poverty and lack of education; extreme parental neglect, lack of supervision and physical abuse; lack of intervention for trauma and loss; substance use and a high risk of susceptibility to criminal involvement in the community and the home itself. From childhood, he has experienced a lack of supervision on the part of his parents whose care of him has been described by social services personnel as "inadequate." . . .

> Terry's environment was the streets of Fifth Ward, then well-known for violence and drugs. His older brothers were claimed by this environment before him; and his older sisters, who might have assumed some of his care, instead left the home and family in their early teens. Poverty, neglect, and drugs were the only ways of life Terry knew. Other men from the streets, including his older brother, became role models to Terry. The streets were able to claim Terry partly due to a developmental failure of positive identification. One of the most important developmental tasks is the effort to identify

oneself independent of parents, peers, and others. Terry did not know where he ended and his least helpful family members began. He was even influenced by his younger brother Calvin who was severely impaired mentally, emotionally and behaviorally.

These factors had a lasting impact on Terry and affected his judgment, insight, and decision-making.

Exh. B (Supplemental Declaration of Janet Vogelsang, March 22, 2022).

The parties exchanged exhibits and witness lists and litigated a *Daubert* motion concerning one of Mr. Washington's experts. ECF No. 240.

On May 20, 2022, the Court ordered an indefinite continuance of the evidentiary hearing, ECF No. 241, and on May 23, the presiding judge, the Honorable David Hittner, recused himself from the case. ECF No. 242. The following day, on May 24, the case was re-assigned to the honorable George C. Hanks, Jr., District Judge. ECF No. 243.

On May 23, 2022, the Supreme Court issued its decision in *Shinn v. Ramirez,* 142 S. Ct. 1718 (2022). As discussed further below, in *Shinn*, the Supreme Court held that *Martinez* did not create a general exception to 28 U.S.C. § 2254(e)(2), which prohibits the presentation of new evidence in federal court in some circumstances.  On June 22, 2022, the Court ordered the parties to file supplemental briefing on the effect on Mr. Washington's case of the recent Supreme Court decision in *Shinn*. ECF No. 245.

# III.   ARGUMENT

## A.   *Shinn* does not prevent this Court from holding an evidentiary hearing on the IAC-*Batson* and IAC Mitigation claims.

The crux of the *Shinn* opinion addresses whether and under what circumstances a federal habeas court may conduct an evidentiary hearing on a claim that was not pled or factually developed in state court proceedings. As explained below, *Shinn*'s holding applies only in cases where a court determines that, under § 2254(e)(2), the petitioner "failed to develop the factual basis of a claim in State court proceedings." Section 2254(e)(2) posits a diligence standard for factual development in state habeas that is distinct from whether state habeas counsel provided ineffective assistance. Here, although Mr. Washington's state habeas counsel was deficient in his failure to present two meritorious claims, he was nonetheless diligent under § 2254(e)(2) in his efforts to develop the state court record. Accordingly, *Shinn* does not bar an evidentiary hearing.

### 1.   *Shinn* held that state habeas counsel's ineffectiveness does not excuse the failure to develop the factual basis of a claim under § 2254(e)(2).

Under AEDPA, a federal habeas court generally may consider a petitioner's claim only if that claim was first exhausted in state court. *See* 28 U.S.C. § 2254(b)(1)(A). If it was not exhausted, then the claim may be procedurally defaulted. The United States Supreme Court has recognized an

exception to this requirement if the petitioner can establish "cause" for the failure to exhaust the claim in state court and show he would be "prejudiced" if the federal court declines to take it up for the first time in federal habeas. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"Cause" is defined as some factor external to the petitioner that prevented him from raising the claim. For many years, state habeas counsel's ineffectiveness in failing to present a claim in state court was not recognized as "cause" because it was not considered "external" to his defense, meaning counsel's fault was imputed to the petitioner. *Coleman*, 501 U.S. at 753. In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held for the first time that state habeas counsel's ineffectiveness in failing to plead an ineffective assistance of trial counsel claim may serve as "cause" to excuse the failure to present the claim in state court.[3]

Another issue for the federal habeas court is whether the claim was factually developed in the state court record. Under § 2254(e)(2), a federal court may not accept new evidence if the petitioner is at fault for the failure to develop the factual basis of a claim in state court unless the petitioner meets certain exceptions that are not applicable here.[4] The Supreme Court has

---

[3] In *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court confirmed that the *Martinez* exception applies to Texas cases.

[4] Petitioner's lack of diligence can be excused if "the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

explained that the phrase "fail[ure] to develop the factual basis of a claim" in § 2254(e)(2) refers to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "[A] person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." *Id.* "The question is not whether the facts could have been discovered [in state court] but instead whether the prisoner was diligent in his efforts." *Williams*, 529 U.S. at 435. To establish this type of diligence—and, in turn, avoid the restrictions of (e)(2)—the petitioner need only show that he "made a reasonable attempt" to develop the record in state court. *Id.*

In *Shinn*, the Supreme Court held that although *Martinez* ineffectiveness may excuse the procedural default of a claim that was not presented in state court, it does not excuse the failure to develop the factual basis for that claim in state habeas. Instead, in the context of § 2254(e)(2), state habeas counsel's failures (or lack of diligence) are imputed to the petitioner. Importantly, *Shinn* did not overrule *Martinez*'s ability to excuse a procedural

---

Court, that was previously unavailable; or (ii) a factual predicate that could not have been discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for some constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

default—it only clarified that the § 2254(e)(2) diligence question is conceptually distinct from the *Martinez* inquiry.

### 2. If § 2254(e)(2) does not apply, neither does *Shinn*.

In the cases at issue in *Shinn,* state habeas counsel not only failed to plead certain claims in state court, but also failed to diligently pursue factual development of those claims. *Shinn*, 142 S. Ct. at 1729–30, 1734. In other words, state habeas counsel's ineffectiveness was twofold, both in failing to present the claim (leading to procedural default) *and* in failing to develop the state court record under § 2254(e)(2). In such a scenario, *Shinn* holds that the federal district court may not hold an evidentiary hearing to consider evidence that was not previously developed in state court. *Id.* at 1734.

The effect of *Shinn* is limited, therefore, to those situations where the petitioner (1) has actually "failed to develop" the factual basis of a claim in state court; *and* (2) attempts to excuse that failure by alleging his state habeas counsel was ineffective. If state habeas counsel was diligent in his attempts to expand the state court record, then there was no "failure to develop" the factual basis of the claim and *Shinn* does not apply. *See Shinn*, 142 S. Ct. at 1734 ("§ 2254(e)(2) applies only when a prisoner has 'failed to develop the factual basis of a claim.' We interpret 'fail' . . . to mean that the prisoner must be 'at fault' for the undeveloped record in state court.").

### 3. Section 2254(e)(2) does not apply here.

Mr. Washington's case presents different facts from those in *Shinn*. Here, although state habeas counsel was ineffective in failing to present two meritorious IATC claims, he nevertheless was diligent in his efforts to develop the state court record—only to be thwarted by the state habeas court. Under these circumstances, the Court is not only permitted to hold an evidentiary hearing but should do so. *See Mothershead v. Wofford*, 2022 WL 2275423 (W.D. Wash. June 23, 2022) (ordering a *Martinez* hearing to proceed, despite the *Shinn* ruling, because petitioner was diligent in attempting to develop the state court record).

### a. State habeas counsel failed to present two meritorious IAC claims.

This case is on remand from the Fifth Circuit with instructions to conduct an evidentiary hearing on the IATC *Batson* and IATC Mitigation claims. *Washington v. Davis*, 715 Fed. App'x 380 (5th Cir. 2017). Both claims were procedurally defaulted, and Mr. Washington has asserted that the default is excused by state habeas counsel's ineffectiveness under *Martinez*.

On more than one occasion, the Fifth Circuit has commented that both claims are potentially meritorious. Mr. Washington was tried by an all-white jury in Harris County in 1986. The trial prosecutors used peremptory challenges "to remove Black and Hispanic venire members . . . result[ing] in

an all-white jury" and raising "an inference that the prosecutor exercised peremptory challenges on the basis of race." *Washington v. Thaler*, 464 Fed. App'x 233, 239 (5th Cir. 2012). Nevertheless, trial counsel did not object under *Batson*. The Fifth Circuit has stated that this evidence alone was enough for state habeas counsel to plead the IATC *Batson* claim. *Id.* at 240–41. State habeas counsel failed to plead the claim, providing ineffective assistance under *Martinez*.

Trial counsel's near-total lack of pre-trial investigation impacted the punishment-phase presentation. State habeas counsel pled a version of an IATC punishment phase claim but it "relied exclusively on an affidavit Washington had signed, suggesting his state habeas counsel's challenge was based on insufficient efforts." *Washington v. Davis*, 715 Fed. App'x 380, 382 (5th Cir. 2017). In federal court, habeas counsel presented a substantially altered IATC Mitigation claim that "provided details about [Washington's] upbringing and character that might have had an impact on his sentence." *Id.* at 385. Ultimately, the Fifth Circuit concluded that "[t]he mere fact that state habeas counsel failed to raise two potentially meritorious IATC claims evidences both his ineffectiveness and the prejudice that resulted." *Id.*

### b. State habeas counsel was thwarted in his attempt to develop the factual basis of certain claims in state court.

State habeas counsel's pleading failures aside, he made diligent efforts to develop the state court record but was thwarted by the state habeas court at every turn. The Supreme Court has stated that "[d]iligence for purposes of the opening clause [of § 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435. In *Williams*, the Court found state habeas counsel diligent also based on his (1) filing a motion for expert services broadly referencing the topic of the claim that was not developed and (2) requesting funding for an investigator to examine the issue. *Id.* at 442. The Court noted that regardless of whether the state court should have granted the requests, the fact that state habeas counsel made them was sufficient to make the provisions of § 2254(e)(2) inapplicable. *Id.* at 443.

Courts within the Fifth Circuit have found diligence under § 2254(e)(2) based on state habeas counsel requesting discovery in the form of subpoenas or depositions, as well as requesting funds to hire an investigator and other experts. *See Wardrip v. Thaler*, 705 F.Supp.2d 593, 605 (5th Cir. 2010) (demonstrating diligence through request for evidentiary hearing, funding for an investigator, and funding for a psychologist); *Wall v. Cain*, 2009 WL

2046816, at *5 (E.D. La. July 13, 2009) (demonstrating diligence with respect to a *Batson* claim by, *inter alia*, seeking to obtain further evidence of discrimination via subpoena); *Adams v. Quarterman*, 2006 WL 2842075, at *11–12 (N.D. Tex. Sept. 29, 2006) (demonstrating diligence through numerous requests for evidentiary hearing and depositions).

In Mr. Washington's case, state habeas counsel took many of the steps that courts have found to be diligent under § 2254(e)(2). Regarding the defaulted IATC-*Batson* claim, prior to filing his initial state habeas application, counsel requested to review the district attorney's file for *Batson* material; sought court-ordered review of the file after the district attorney's office declined his request; sought discovery concerning jury selection practices in Harris County; sought depositions of records custodians within the district attorney and county clerk's offices; and requested to depose trial counsel on multiple occasions. *See* ECF No. 42 at 30–32. The state habeas court denied each of the requests for pre-filing factual development. *Id.* Mr. Reger filed the initial state habeas application in April 1990. Although he did not include the "potentially meritorious" IATC *Batson* and IATC-Mitigation claims in the pleading, he did request an evidentiary hearing to further develop the state court record.

After filing the initial application, state habeas counsel filed another motion for discovery, requesting to depose the trial prosecutors and re-urged

his other motions for funding and factual development. December 26, 1990, First Post-Conviction Motion for Discovery State habeas counsel likewise sought the necessary resources for factual development of punishment phase issues. For example, counsel requested funding for an investigator, for experts in forensics and mental health, and for an experienced criminal defense lawyer to assist him with the case. *See* ECF No. 42 at 30–32.[5] The state habeas court denied each of the requests. *Id.*

In 1997, the state habeas court convened a status conference at which it expressed its disappointment that the case had "languished" in state court for so long. At that time, the court denied all of Mr. Washington's pending motions, his request for an evidentiary hearing, and his habeas petition (signing the State's proposed findings and conclusions verbatim). *See* ECF No. 42 at 34–36.

As it turns out, both trial prosecutors would later be found to have violated *Batson* in a similar manner in separate trials that occurred around the time of Mr. Washington's trial. And, years later, Mr. Washington would discover in the district attorney's file that the prosecution also race-coded their juror questionnaires, denoting the questionnaires of Black jurors with the letter "B." Since then, trial counsel has provided sworn deposition testimony

---

[5] As noted, counsel, an experienced civil attorney, took Mr. Washington's case in response to an urgent plea from the Texas Bar for volunteer pro bono counsel, despite the fact that he had never handled a criminal case. He received no financial assistance from his law firm and paid all case-related expenses out of his own pocket.

regarding his failure to object under *Batson*, and the trial prosecutors have provided affidavits with their alleged race-neutral explanations for their numerous strikes of minority jurors. Mr. Washington has also developed a wealth of evidence, including expert testimony from a psychiatrist, neuropsychologist, Texas Youth Commission historian, and expert social worker that describes his traumatic and strongly mitigated life in compelling detail that the jury never heard.

    To date, none of this evidence has never been presented in an evidentiary hearing and some of it is not included in the state court record.[6] But that is not due to Mr. Washington's or his state habeas attorney's failures. The state court was repeatedly called upon to facilitate factual development and consistently refused to do so. Section 2254(e)(2) is not designed to prevent factual development in federal court when state habeas counsel was prevented from doing so despite diligent efforts.

---

[6] The state record does not include the opinion in *Rosales v. Quarterman*, 2008 WL 11492954 (S.D. Tex. 2008) finding trial prosecutor Keno Henderson violated *Batson* in a 1985 death penalty trial; the trial prosecutors' stated reasons for striking numerous minority jurors in Mr. Washington's 1986 trial; trial counsel's testimony regarding his failure to object under *Batson* and his failure to conduct a mitigation investigation; or any of the expert reports discussed in the Factual and Procedural Background above.

**B.     If the Court concludes that § 2254(e)(2) bars the consideration of any evidence that was not presented during Mr. Washington's state court proceedings, the Court should stay this case to enable Mr. Washington present the evidence to the state court.**

For the reasons set forth above, § 2254(e)(2) does not prevent this Court from considering new evidence concerning Mr. Washington's IATC-*Batson* and IATC-Mitigation claims. If the Court were to conclude otherwise (which it should not), there is another path for the Court to consider the new evidence Mr. Washington has developed. The Court can stay this case to permit Mr. Washington to return to the CCA and file a successive state habeas application or a suggestion of reconsideration containing the new evidence. As discussed below, Mr. Washington might succeed in the CCA on his IATC-*Batson* claim, which would moot the federal proceeding entirely. If Mr. Washington is not successful, however, this Court will be able to review the complete evidentiary record concerning the claims because it will have become part of the state court record.

### 1.  This court has the inherent authority to stay proceedings.

"A district court has the inherent power to stay cases to control its docket and promote efficient use of judicial resources." *Coker v. Select Energy Servs., LLC*, 161 F. Supp. 3d 492, 494–95 (S.D. Tex. 2015) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Federal district courts possess "wide discretion"

in determining whether a stay is appropriate. *Dominguez v. Hartford Financial Servs. Group*, 530 F. Supp. 2d 902, 905 (S.D. Tex. 2008) (citing *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990)). "Whether to stay 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 978 (S.D. Tex. 2011) (quoting *Landis*, 299 U.S. at 254–55). A district court's decision to stay a habeas proceeding is generally not appealable, either under the collateral order doctrine or from final judgment. *Grace v. Vannoy*, 826 F.3d 813, 820–21 (5th Cir. 2016).

One situation where a district court might stay a federal habeas proceeding is when the federal petition contains claims that were not presented to the state court and are therefore unexhausted in federal court. Under *Rhines v. Weber*, 544 U.S. 629 (2005), the district court can stay the federal proceedings to allow the petitioner to exhaust his claims in state court. A stay of a federal habeas proceeding can also be appropriate in other circumstances. For example, federal district courts have issued stays where the outcome of a pending appellate court decision in another case may affect the resolution of the case before it. *See, e.g., In re Keys*, 692 F. App'x 92, 93 (3d Cir. 2017); *Velasquez v. Horel*, 2009 WL 2251612, at *2 (E.D. Cal. 2009) Federal district courts have also granted stays to allow petitioners to pursue wholly discretionary, non-judicial processes that assist them in obtaining post-

conviction relief. For instance, in *Cibelli v. Davis*, 2021 WL 2224342, at *1 (D.N.J. 2021), the district court issued a stay because the Conviction Review Unit, a state law enforcement agency that reviews closed cases for actual innocence, was examining the DNA evidence used to convict the petitioner. Likewise, in *Baker v. Brewer*, 2020 WL 1952520, at *1 (E.D. Mich. 2020), the district court stayed the case so that petitioner could seek review from the state's Conviction Integrity Unit. The district court did so even though it had previously granted a *Rhines* stay. *Baker v. Stewart*, 2017 WL 2334937, at *1 (E.D. Mich. 2017).

### 2. After Mr. Washington presents his new evidence to the state court, this Court will be able to consider the evidence in rendering its decision.

Where § 2254(e)(2) applies and where the petitioner has not met the requirements of subsections 2254(e)(2)(A) and (B), the federal court is precluded from considering evidence beyond the state court record. *Shinn*, 142 S. Ct. at 1735. The state court record, however, is not limited to the record developed by the petitioner in the state court proceedings prior to the initiation of federal proceedings. Rather, the state court record may be expanded by subsequent state court litigation that occurs after the federal proceedings have begun.

The Supreme Court's decision in *Trevino v. Thaler*, 569 U.S. 413 (2013) illustrates this point. In *Trevino*, the petitioner's ineffective assistance of

counsel claim was initially unexhausted (i.e., the petitioner had not presented the claim during his state post-conviction proceedings). *Id.* at 419. The federal district court issued a *Rhines* stay so that the petitioner could return to state court to exhaust the claim. *Id.* at 420. The state court held that the claim was procedurally defaulted because the petitioner had not raised it in his initial state court proceedings. *Id.* The federal district court likewise held that the claim was procedurally defaulted, but was subsequently reversed by the Supreme Court, which held that the equitable exception to procedural default announced in *Martinez v. Ryan* (ineffective assistance of state habeas counsel) applies to Texas cases. *Id.* at 429. When the case returned to the lower federal courts, they were free to consider the evidence the petitioner had submitted in his successive state court application, even though it had not been submitted in the petitioner's initial state habeas application and even though state courts had rejected the claim on procedural grounds when it was presented in a subsequent petition. *See Trevino v. Davis*, 861 F.3d 545, 549–51 (5th Cir. 2017).

The States of Texas, Alabama, Arkansas, Florida, Indiana, Kentucky, Mississippi, Missouri, Nebraska, Ohio, Oregon, South Carolina, and Utah all endorsed this view in the amicus brief they submitted to the Supreme Court in *Shinn*. Authored by the Texas Attorney General's office, the amicus brief states:

Moreover, evidence developed in state court for other purposes, such as to support a different claim or overcome a state procedural bar, can be considered in federal court to support a *Martinez*-excused ineffective-assistance claim consistent with section 2254(e)(2). *See, e.g.*, *Apelt v. Ryan*, 878 F.3d 800, 825–34 (9th Cir. 2017) (considering evidence presented in state court and rejected on state-law procedural grounds in conjunction with a claim excused by *Martinez*). *Trevino* itself was an example of this principle in action. Before that case reached this Court, Trevino discovered evidence which could support claims that he did not raise in initial state habeas proceedings. 569 U.S. at 419. The district court stayed federal-habeas proceedings so Trevino could exhaust state remedies. *Id.* at 419–20. When Trevino returned to federal court, his ineffective-assistance claim and the evidence supporting it were incorporated in the state-court record and cognizable in federal-habeas proceedings (provided cause and prejudice existed to overcome procedural default). *See id.* at 420–21. That result is consistent with a faithful reading of section 2254(e)(2).

Exh. C. Thus, if the Court grants a stay, allowing Mr. Washington to present this new evidence to the state court, this Court subsequently will be able to consider any evidence that it deemed barred by § 2254(e)(2).

### 3. In light of the CCA's decision in *Ex parte Robertson*, Mr. Washington has a strong chance of obtaining relief in state court.

Staying this proceeding to allow Mr. Washington to present his new evidence to the state court will not just ensure that this Court can consider the evidence in ruling on Mr. Washington's claims. It may make it unnecessary for this court to issue any further decisions in Mr. Washington's case. In light of the CCA's decision in *Ex parte Robertson*, 603 S.W.3d 427 (Tex. Crim. App. 2020), the CCA might grant relief on Mr. Washington's IATC-*Batson* claim.

In *Robertson*, the petitioner had raised an ineffective assistance of counsel claim alleging that his defense attorney and the prosecutor agreed to strike Black venire members. *Id.* at 427. The CCA denied relief on the claim in 1998. *Id.* In 2019, the petitioner filed a suggestion of reconsideration requesting that the CCA reconsider its decision. *Id.* at 428. The CCA agreed to do so. It emphasized the numerous decisions issued by the Supreme Court over the intervening 20 years making clear that racial discrimination in the selection of juries and the imposition of the death penalty cannot be tolerated. Quoting *Flowers v. Mississippi*, 139 S. Ct. 2228, 2243 (2019), the CCA noted that "in the decades since *Batson*, the Supreme Court has 'vigorously enforced and reinforced the decision' and 'extended *Batson* in certain ways.'" *Id.* at 428 n.3. The CCA also cited *Miller-El v. Cokrell*, 537 U.S. 322 (2003) and *Miller-EL v. Dretke*, 545 U.S. 231 (2005), both of which are *Batson* decisions in Texas cases that had been issued after the CCA's original decision in *Robertson*. *Id.* In addition, the CCA cited two non-*Batson* cases: *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), which held that the Sixth Amendment prohibits jurors from issuing verdicts based on racial stereotypes, and *Buck v. Davis*, 137 S. Ct. 759 (2017), which held that a defendant's right to effective assistance of counsel was violated where defense counsel presents evidence that the petitioner is more likely to act violently in the future because he was black. *Id.*

Judge Newell filed a concurring opinion. He emphasized that "[r]acially-motivated peremptory strikes during jury selection not only affect a defendant's rights, they also deprive a community of its voice in a criminal trial." *Id.* at 429. Quoting from the recent *Flowers* decision, he emphasized that "'one racially motivated strike is too many.'" *Id.* (quoting *Flowers*, 139 S. Ct. at 2241). He also pointed out that *Batson* violations harm not only the defendant, but also "involve the denial of the rights of jurors to participate in civic life" and "'undermine public confidence in the fairness of our system of justice.'" *Id.* at 430 (quoting *Batson*, 476 U.S. at 87). Noting that "the United States Supreme Court has issued opinions focused upon removing consideration of race in criminal prosecution," Judge Newell concluded that CCA could not "be comfortable with our previous resolution of this case." *Id.* at 431. Judge Newell also emphasized that even if the petitioner's claim was "regarded as an ineffective assistance of counsel claim rather than a stand-alone *Batson* claim," the intervening Supreme Court decisions suggested that the petitioner had a path to relief.

In Mr. Washington's case, the CCA denied relief on the IATC-*Batson* claim in 2002, before the intervening Supreme Court decisions relied on by CCA in reconsidering its previous denial of the *Batson*-based ineffective-assistance-of-counsel claim in *Ex parte Robertson*. In light of CCA's decision in *Robertson*, and particularly the court's emphasis on the need to aggressively

combat racially motived peremptory strikes, there is a reasonable probability that the CCA would likewise reconsider its previous decision in Mr. Washington's case. If the CCA were to do so and grant Mr. Washington relief, this federal proceeding would be entirely mooted. If the CCA did not so, this Court could then consider the full record that Mr. Washington has developed in federal court over the last several decades because it would have become part of the state court record and would thus meet the exhaustion requirement emphasized in *Shinn*.

> **C.    If this Court concludes that § 2254(e)(2) bars it from considering new evidence and that it will not stay this case, Mr. Washington requests an opportunity to submit legal briefing in support of his entitlement to relief on the existing record.**

As discussed above, *Shinn* should not prevent this Court from considering evidence outside the current state court record in assessing Mr. Washington's claims. If the Court concludes otherwise (which it should not), Mr. Washington contends that he can still prevail on his IATC-*Batson* and IATC-Mitigation claims based on the current state court record. If the Court agrees there is potential merit to the claims, it can still hold a hearing on state habeas counsel's ineffectiveness to determine whether the procedural default of the claims is excused under *Martinez*. *Shinn* only bars such a hearing when § 2254(e)(2) bars new evidence and the petitioner cannot prevail on his claims without the new evidence. *See Shinn*, 142 S. Ct. at 1788–89.

Because there has been a significant amount of highly relevant new case law since Mr. Washington pled the claims fifteen years ago and because the factual scope of the claims remains unclear at this point, Mr. Washington respectfully requests the opportunity to submit legal briefing concerning his IATC-*Batson* and IATC-Mitigation claims if the Court determines that Mr. Washington's claims must be assessed solely on the basis of the current state court record.

## IV.   CONCLUSION

For the reasons set forth above, the Court should conclude that *Shinn* does not prevent the factual development of this case in federal court. If the Court concludes otherwise, the Court should stay this case to enable Mr. Washington to present his new evidence to the state court, which has the potential of mooting these federal proceedings entirely. Finally, should the Court decide that § 2254(e)(2) bars it from considering new evidence and that it cannot stay this case, it can still hold an evidentiary hearing on state habeas counsel's ineffectiveness, provided that Mr. Washington can succeed on his claims based on the current state court record. Should the Court decide this is its only recourse for considering the claims (which it should not), Mr. Washington respectfully requests the opportunity to submit legal briefing concerning his entitlement to relief on the existing court.

Respectfully submitted,


DATED: July 29, 2022

/s/ *Derek VerHagen*
DEREK VERHAGEN
Federal Public Defender
Capital Habeas Unit
TX Bar No. 24090535
525 S. Griffin Street, Suite 629
Dallas, Texas 75202
Telephone: (214) 767-2746
Facsimile: (214) 767-2886
Email: derek_verhagen@fd.org

/s/ *David C. Currie*
DAVID C. CURRIE
Federal Public Defender
Capital Habeas Unit
TX Bar No. 24084240
525 S. Griffin Street, Suite 629
Dallas, Texas 75202
Telephone: (214) 767-2746
Facsimile: (214) 767-2886
Email: david_currie@fd.org


/s/ *James C. Lohman*
JAMES C. LOHMAN
1806 East 39th Street
Austin, Texas 78722
(512) 542-9947
S.D. Texas Bar #764049
Florida Bar #570214

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petitioner's Brief Regarding *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) has been served by CM/ECF upon counsel for Respondent on July 29, 2022.

/s/ *David C. Currie*
David C. Currie